USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___4/7/2021___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                :

   **UNITED STATES OF AMERICA,**         :
                                 :

                   **Plaintiff,**      :    **1:20-cr-00115-ALC-3**
             **-against-**             :

                                 :    **OPINION AND ORDER**

   **VALDEZ,**                      :

                    **Defendant.**    :

                                   :
-------------------------------------------------------------X

**ANDREW L. CARTER, JR., United States District Judge:**

      The Court now considers pretrial motions from Defendant Cristian Valdez, who, with co-Defendants Jose Recio-Rondon and Ronald Soriano, is charged with various counts arising from a November 13, 2019 incident. Specifically, the Defendants are charged with conspiracy to commit Hobbs Act Robbery in violation of 18 U.S.C. §1951, (Count One); attempted Hobbs Act Robbery in violation of 18 U.S.C. §1951-2, (Count Two); and using, carrying and possessing a firearm during the commission of Count Two, in violation of §924(c)(1)(A)(i)-(ii), (2), (Count Three). Valdez moves to (1) suppress the fruits of two warrants for cellular phone data, arguing that the applications for such warrants did not establish probable cause; (2) dismiss Counts One and Two because they fail to state a Hobbs Act Robbery, pursuant to 18 U.S.C. §1951(b)(1); and (3) dismiss Count Three, regardless of the disposition of Count Two, because an attempted Hobbs Act Robbery is not a "crime of violence" pursuant to 18 U.S.C. §924(c)(A).

      For the reasons that follow, the Court GRANTS Valdez's motion to dismiss Count Three because attempted Hobbs Act robbery is not a "crime of violence" pursuant to 18 U.S.C.

§924(c)(A). However, the Court concludes the remainder of Valdez's motion is without merit; it is therefore DENIED.

BACKGROUND

The Court reviews the background of this matter by way of the Affidavits of Drug Enforcement Administration ("DEA") Special Agent James Lowndes ("SA Lowndes"). SA Lowndes was involved in the investigation preceding this matter and his Affidavits, dated December 2, 2019 (First Lowndes Affidavit) and December 6, 2019 (Second Lowndes Affidavit), were filed in support of applications for warrants for cell phone data, which were granted by Magistrate Judge Barbara Moses on those same dates, and which Valdez now challenges. Because Valdez also challenges the sufficiency of the Indictment, the Court summarizes the charges therein as well.

1. Warrants

As set forth in the First Lowndes Affidavit, SA Lowndes and others were investigating a drug trafficking organization that purchases narcotics, including heroin and fentanyl, for distribution in the New York City area. Dkt. 37-1 ¶ 7. Recio-Rondon and Soriano were Target Subjects of that investigation. Dkt. 37-1 ¶ 7.

In or around November 2019, a confidential source, CS-1, and a Source of Information, SOI-1, made contact with a person, later identified as Recio-Rondon, to arrange the sale of approximately 200 fentanyl pills. Dkt. 37-1 ¶ 7a. On or about November 13, 2019, CS-1 and SOI-1 met Recio-Rondon in Manhattan, where he told them he had sold his supply of fentanyl pills, but offered to sell CS-1 and SOI-1 two kilograms of heroin. Dkt. 37-1 ¶ 7b. Several hours later, CS-1 and SOI-1, at the direction of law enforcement, met Recio-Rondon in the Bronx, and told

him they would proceed with the purchase of the heroin. Dkt. 37-1 ¶ 7c. Recio-Rondon told them that he was waiting for two individuals to complete the transaction. Dkt. 37-1 ¶ 7c.

At approximately 9:15 p.m., Recio-Rondon, a man later identified as Soriano, and a then-unknown third individual met with CS-1 and SOI-1. Dkt. 37-1 ¶ 7c. While CS-1 waited in a car outside, the others went inside an apartment building. Dkt. 37-1 ¶ 7c. Soriano beat SOI-1 with a pistol and the unknown third individual stabbed SOI-1 with a knife. Dkt. 37-1 ¶ 7c. After that, Soriano approached CS-1 while seated in his vehicle and threatened him. Dkt. 37-1 ¶ 7d. But, the surveilling law enforcement approached the vehicle and tried to apprehend Soriano. Dkt. 37-1 ¶ 7d. Soriano took off running, and law enforcement recovered a pistol and folding knife he discarded. Dkt. 37-1 ¶ 7d. Recio-Rondon and Soriano were identified, apprehended, and arrested. Dkt. 37-1 ¶ 7d. They were charged by a complaint filed November 14, 2019.

The First Lowndes Affidavit further explains that law enforcement used toll records to identify several cellular telephones of interest, which were Target Cellphones of the December 2, 2019 Warrant Application. The Target Cellphones include those associated with cellular telephone numbers 646-578-5043 (Target Cellphone-1) and 646-578-0417 (Target Cellphone-2), believed to belong to Valdez. Dkt. 37-1 ¶ 4.[1] The warrant also sought information regarding a cellphone that was seized from Soriano at the time of his arrest, Target Cellphone-3, assigned the number 929-476-9164. Dkt. 37-1 ¶¶ 4, 9a.

---

[1] To carry the burden to show standing to contest a warrant, a defendant must submit an "affidavit from someone with personal knowledge demonstrating sufficient facts to show that he had a legally cognizable privacy interest in the searched premises at the time of the search." *United States v. Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993), *aff'd*, 44 F.3d 1102 (2d Cir. 1995) (citing Rawlings, 448 U.S. at 98). By a declaration filed on October 5, 2020, Valdez affirmed he is the subscriber associated with Target Cellphone-1 and -2, and had exclusive possession and use of the cellular telephones. Dkt. 44-1 ¶ 2. The Court concludes Valdez's affidavit suffices to establish standing.

On or about November 13, 2019, between approximately 8:09 p.m. and 8:48 p.m., Target Cellphone-1 and Target Cellphone-3 communicated with one another approximately 7 times. Dkt. 37-1 ¶ 9b. After November 16, 2019, there were no calls placed from Target Cellphone-1. Dkt. 37-1 ¶ 9b. On or about November 16, 2019, Target Cell-Phone 2 began to receive numbers from four of the five numbers that communicated with Target Cellphone-1. Dkt. 37-1 ¶ 9.d. SA Lowndes opined based on his training, experience, and involvement with the investigation, that this indicated that the user of Target Cellphone-1 "dropped" or stopped using Target Cellphone-1 and started using Target Cellphone-2. Dkt. 37-1 ¶ 9.c.

Based on the foregoing, the First Lowndes Affidavit submitted to the court that there was probable cause to believe that Valdez was the user of Target Cellphone-1 and Target Cellphone-2, and Soriano was the user of Target Cell-Phone 3; that the Target Cellphones were used in furtherance of the November 13, 2019 incident; and that the location data associated with the Target Cellphones would, *inter alia*, identify Valdez's location during the incident as well as his present location. Dkt. 37-1 ¶ 10.

On December 2, 2019, MJ Moses granted the application by a Warrant and Order for Historical Cellphone Location Information and for Sealing and Non-Disclosure. Therein, MJ Moses concluded that the Government's application set forth probable cause to believe that the location information for the Target Cellphones would reveal evidence, fruits, or instrumentalities of various suspected crimes, and was relevant and material to an ongoing criminal investigation. Dkt. 37-2 ¶ 2-3.

On December 6, 2019, the Government made another application for a warrant supported by the Second Lowndes Affidavit. The Second Lowndes Affidavit relied on the allegations set forth in the First Lowndes Affidavit, as well as proceeds of the December 2, 2019 Warrant issued

by MJ Moses. In particular, SA Lowndes set forth further location data indicating that Target

Cellphones-2 and -3 had been in the vicinity of the November 13, 2019 incident around 9 p.m.

Dkt. 37-3 ¶¶ 12a-b. Based on that information, the Government sought further data about Target

Cellphone-2, including prospective precision location and cell site data, historical cell site data and

toll records, and prospective pen register information. Dkt. 37-3 ¶ 14. MJ Moses again found

probable cause to grant the application. On December 6, 2019, MJ Moses issued a Warrant and

Order for Cellphone Location Information and Pen Register Information and for Sealing and Non-

Disclosure. ECF No. 37-4.

2.  Indictment

Valdez was arrested on December 11, 2019. By an Indictment filed on February 6, 2020,

Valdez, Seriano, and Recio-Rondon were charged with three counts. Count One, Conspiracy to

Commit Hobbs Act Robbery, charges:

> On or about November 13, 2019, in the Southern District of New York and elsewhere,
> JOSE RECIO-RONDON, RONALD SORIANO, and CRISTIAN VALDEZ, the
> defendants, and others known and unknown, did knowingly combine, conspire,
> confederate and agree together and with each other, to commit robbery, as that term is
> defined in Title 18, United States Code, Section 1951(b) (1), and would and did thereby
> obstruct, delay, and affect commerce and the movement of articles and commodities in
> commerce, as that term is defined in Title 18, United States Code, Section 1951(b) (3), to
> wit, RECIO-RONDON, SORIANO, and VALDEZ conspired to commit the armed robbery
> of an individual they believed to be a narcotics dealer in the Bronx, New York.

Dkt. 14 ¶ 1.

> Count Two, Attempted Hobbs Act Robbery, charges:

> On or about November 13, 2019, in the Southern District of New York and elsewhere,
> JOSE RECIO-RONDON, RONALD SORIANO, and CRISTIAN VALDEZ, the
> defendants, did knowingly attempt to commit robbery, as that term is defined in Title 18,
> United States Code, Section 195l(b)(1), and did thereby obstruct, delay, and affect
> commerce and the movement of articles and commodities in commerce, as that term is
> defined in Title 18, United States Code, Section 195l(b) (3), to wit, RECIO-RONDON,

SORIANO, and VALDEZ attempted to commit an armed robbery of an individual they believed to be a narcotics dealer in the Bronx, New York.

Dkt. 14 ¶ 2.

Count Three, Firearms Use, Carrying, and Possession, charges:

On or about November 13, 2019, in the Southern District of New York and elsewhere, JOSE RECIO-RONDON, RONALD SORIANO, and CRISTIAN VALDEZ, the defendants, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the attempted robbery charged in Count Two of this Indictment, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished.

Dkt. 14 ¶ 3.

DISCUSSION

1.  Motion to Suppress

Valdez asks the Court to exclude any evidence arising from the December 2, 2019 and December 6, 2019 Warrants because MJ Moses lacked a substantial basis to find probable cause for issuance of the Warrants. According to Valdez, the Lowndes Affidavits are insufficient to support an inference that the Target Cellphones were used in furtherance of the November 13, 2019 incident, as opposed to an unrelated purpose. He further contends that the December 6, 2019 warrant is poisonous fruit of the deficient December 2, 2019 warrant. For the reasons that follow, this portion of the motion is DENIED.

A.     Legal Standards

"[P]robable cause to search is demonstrated where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). When reviewing a probable cause determination, a court "must accord considerable deference to the probable cause determination of the issuing

6

magistrate." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (citing *Walczyk*, 496 F.3d at 157). Accordingly, "the task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." *Clark*, 638 F.3d at 93 (citing *Gates*, 462 U.S. at 232) (internal quotation marks omitted)). "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (citing *Jones v. United States*, 362 U.S. 257, 270, 4 L. Ed. 2d 697, 80 S. Ct. 725 (1960)).

B.     Application

Applying this deferential standard of review, the Court easily concludes there was a substantial basis to find probable cause to issue the December 2, 2019 and December 6, 2019 Warrants. Specifically, Target Cellphone-3 was seized from Soriano; on or about November 13, 2019, between approximately 8:09 p.m. and 8:48 p.m., Target Cellphone-1 and Target Cellphone-3 communicated with one another approximately 7 times; then after November 16, 2019, numbers that had been contacting Target Cellphone-1 began contacting Target Cellphone-2. That a phone found on Soriano contacted Target Cellphone-1 repeatedly in the lead up to the November 13, 2019 incident provides a substantial basis for finding probable cause that the Target Cellphones were used in the commission of the charged conduct. Additionally, that Target Cellphone-1 ceased activity after November 16, 2019, and four of the five numbers that contacted Target Cellphone-1 most frequently began contacting Target Cellphone-2, supports an inference that location data from Target Cellphone-2 might indicate the current location of Valdez.

7

Valdez's arguments that the Affidavits are insufficient fail because they simply ignore the aforementioned details set forth in the Lowndes Affidavits. For example, Valdez argues that the 7 calls between Target Cellphone-1 and Target Cellphone-3 could have been an Uber driver or an employer of Soriano calling about something unrelated to the alleged drug transaction turned robbery. But these were not seven calls at a random time—they were in the lead up to an alleged drug transaction turned robbery, which the Lowndes Affidavits indicate was being planned during the period when the calls occurred. This is not a case of probable cause being improperly granted based on boilerplate assertions or conjecture, as Valdez contends.

Having concluded that MJ Moses had a substantial basis to find probable cause for issuance of the December 2, 2019 and December 6, 2019 Warrants, the Court need not reach the parties' remaining arguments. The Court DENIES the motion to suppress proceeds of the Warrants.

2.   Failure to State a Violation of 18 U.S.C. §1951(b)(1)

Valdez argues that Counts One and Two of the Indictment fail to state a violation of 18 U.S.C. §1951(b)(1) because the Indictment inadequately pleads that Valdez was aware a robbery was planned or attempted, and that the target of such robbery was believed to be a narcotics dealer. The Court concludes the Indictment is sufficient and DENIES this portion of the motion.

A.   Legal Standards

Rule 12(b)(1) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P 12(b)(1). Additionally, a motion that an indictment fails to state an offense "must be raised by pretrial motion if the basis for the motion is then reasonably available". Fed. R. Crim. P. 12(b)(3)(B). Under the Federal Rules of Criminal Procedure, the indictment "must

be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and must include the "statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). In line with this, the Second Circuit has "consistently upheld indictments that 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (citing *Walsh*, 194 F.3d at 44).

Despite the otherwise lenient sufficiency standard, courts must be mindful that "[a]n indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments." *Id.* at 91-92 (citations omitted). "The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Id.* at 92 (citing *Walsh*, 194 F.3d at 44). "The Sixth Amendment guaranty of the defendant's right 'to be informed of the nature and cause of the accusation' against him is also offended by an indictment that does not state the essential elements of the crime." *Id.* (*Russell v. United States*, 369 U.S. 749, 761, 8 L. Ed. 2d 240, 82 S. Ct. 1038 (1962)). To comply with the Fifth and Sixth Amendments, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) (citing *Hamling v. United States*, 418 U.S. 87, 117, 41 L. Ed. 2d 590, 94 S. Ct. 2887 (1974)).

B.    Application

Here, the Indictment tracks the language of 18 U.S.C. §1951(b)(1) in charging Count One, Conspiracy to Commit Hobbs Act Robbery, and Count Two, Attempted Hobbs Act Robbery. The

Indictment further indicates that on or about November 13, 2019, the Defendants "attempted to commit an armed robbery of an individual they believed to be a narcotics dealer in the Bronx, New York". ECF No. 14 ¶ 2. This is just the sort of indictment that the Second Circuit has "consistently upheld"—it "track[s] the language of the statute charged and state[s] the time and place (in approximate terms) of the alleged crime.'" *Pirro*, 212 F.3d at 92.

Valdez's reliance on *Pirro* to argue that the Indictment is insufficient is misplaced. The general rule from *Pirro* is that "where the definition of an offen[s]e, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offen[s]e in the same generic terms as in the definition; but it must state the species,-- it must descend to particulars." *Id.* at 93 (citing *United States v. Cruikshank*, 92 U.S. 542, 23 L. Ed. 588 [1875]). The indictment at issue there ran afoul of this rule because it failed to allege an element of the offense charged—namely, "a material falsehood or an omission that amounted to a material falsehood". *Id.* Though the indictment charged the defendant with not disclosing an ownership interest in certain properties on his tax return, it failed to allege any duty to disclose that interest. The *Pirro* indictment thereby failed to plead all of the essential elements of the charged offense. Here, Valdez has not identified any comparable defect by which the Indictment fails to "descend into the particular" or impermissibly relies on "generic terms".

What defects Valdez does allege are premature sufficiency of the evidence arguments. *See United States v. Gatto*, 295 F. Supp. 3d 336, 350 (S.D.N.Y. 2018). For example, Valdez takes issue with the Indictment not providing "any factual basis for even an inference that Valdez knew a robbery was planned, or that its target was believed to be a narcotics dealer". Mot. at 19. Valdez does not, and could not, cite any authority that a sufficient indictment must allege such facts.

The remainder of Valdez's arguments critique the Complaint, which is irrelevant to the sufficiency of the Indictment. This is because the indictment "must be considered as it was actually drawn, not as it might have been drawn". *Pirro*, 212 F.3d at 92 (citing *Sanabria v. United States*, 437 U.S. 54, 65-66, 57 L. Ed. 2d 43, 98 S. Ct. 2170 (1978)). Nor does the Court see any indication that the Indictment would fail to enable Valdez to plead an acquittal or conviction in bar of future prosecutions for the same offenses.

For these reasons, the Court concludes that the Indictment is not insufficient as to Counts One and Two. Valdez's motion to dismiss on these grounds is DENIED.

3.  Whether Attempted Hobbs Act Robbery Is A Crime of Violence

Finally, Valdez argues that Count Three should be dismissed because an attempted Hobbs Act Robbery is not a crime of violence pursuant to Section 924(c). The Court agrees and GRANTS this portion of the motion.

A.    Legal Standards

In pertinent part, Section 924(c) states that it is unlawful for:

> Any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in the furtherance of any such crime, possesses a firearm.

18 U.S.C. § 924(c)(1)(A). Thus, the commission of a federal "crime of violence" is a requisite element of a Section 924(c) crime.

Initially, Congress defined a crime of violence as

> an offense that is a felony and—
>
> (A) has as an element, the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Clause A is known as the elements or force clause, and Clause B the residual or risk of force clause. *United States v. Wright*, 807 F. App'x 31, 34 (2d Cir. 2020).

Subsequently, the Second Circuit, following the Supreme Court's interpretation of similar statutory language in *United States v. Johnson*, 576 U.S. 591, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2016), struck down Section 924(c)(3)(B) as unconstitutionally vague. *United States v. Barrett*, 937 F.3d 126, 128 (2d Cir. 2019). It further held that courts must apply a "categorical approach" when analyzing Section 924(c). *Id.* Under the categorical approach, to determine if an offense is a "crime of violence" under Section 924(c)(3)(A), a court "evaluate[s] whether 'the minimum criminal conduct necessary for conviction under a particular statute' necessarily involves violence." *United States v. Hendricks*, 921 F.3d 320, 327 (2d Cir. 2019).

B.      Application

The Second Circuit has held that a Hobbs Act Robbery qualifies as a crime of violence under the elements clause of § 924(c)(3)(A). *United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2016). It has also held that Conspiracy to Commit Hobbs Act Robbery is not a crime of violence under § 924(c)(3)(A). *Barrett*, 937 F.3d at 127. But, whether an attempted Hobbs Act robbery is a "crime of violence" is a question the Second Circuit has yet to answer, *United States v. Biba*, 788 F. App'x 70, 72 (2d Cir. 2019), and one which has divided those circuits that have, *Collier v. United States*, 989 F.3d 212 (2d Cir. 2021) (collecting cases). This Court recently had occasion to consider this issue in *Celaj v. United States*, No. 1:13-cv-1290 (ALC), 2021 U.S. Dist. LEXIS 18816, at *29-31 (S.D.N.Y. Feb. 1, 2021), and concluded that an attempted Hobbs Act robbery is not a crime of violence as defined by § 924(c)(3)(A). Given that there has been no intervening decision by the Second Circuit, the Court reaches the same conclusion again.

12

Applying the categorical approach, the Court must "identify the elements of the predicate conviction by determining the minimal criminal conduct a defendant must commit to be convicted," *Moore,* 916 F.3d at 240. This requires consideration of both the elements of a Hobbs Act Robbery, and what constitutes attempt under federal law.

A person commits Hobbs Act robbery when he "obstructs, delays, or affects commerce of the movement of any article or commodity in commerce, by robbery . . . or attempts or so conspires to do or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to" commit robbery as defined by the statute. 18 U.S.C. § 1951(a). The statute defines "robbery" in relevant part as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession . . . ." 18 U.S.C. § 1951(b)(1).

To be convicted of an attempt crime under federal law, "a defendant must (a) have the intent to commit the object crime and (b) engage in conduct amounting to a substantial step towards its commission." *United States v. Cheese*, No. 18-CR-33-2 (NGG), 2020 U.S. Dist. LEXIS 24643, 2020 WL 705217, at *2 (E.D.N.Y. Feb. 12, 2020) (citing *United States v. Yousef*, 327 F.3d 56, 134 (2d Cir. 2003). "A defendant with the requisite intent intends to commit all elements of the target offense". *Celaj,* 2021 U.S. Dist. LEXIS 18816, at *36. As the Second Circuit has explained, "[a] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." *United States v. Farhane*, 634 F.3d 127, 177 (2d Cir. 2011) (quoting *United States v. Manley*, 632 F.2d 978, 987 (2d Cir. 1980)). In the context of robbery, a substantial step may include reconnoitering, casing a potential robbery target, possessing robbery paraphernalia, "lying in wait, searching for or following the

contemplated of victim of the crime" or "enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission". *Celaj*, 2021 U.S. Dist. LEXIS 18816, at *36 (citing *United States v. Jackson*, 560 F.2d 112, 120 (2d Cir. 1977), *FNU LNU v. United States*, Nos. 6-cr-172, 16-cv-4499, 2020 U.S. Dist. LEXIS 160417, 2020 WL 5237798, at *5 (S.D.N.Y. Sept. 2, 2020), and Section 5.01 of the Model Penal Code, as persuasive authority).

As described above, the conduct constituting a substantial step towards an attempted Hobbs Act Robbery need not involve a defendant's attempted, threatened, or employed force. Rather, a substantial step may be surveillance or planning, which may be accomplished with no force at all. The Court therefore concludes that the minimal criminal conduct a defendant must commit to be convicted of attempted Hobbs Act Robbery does include force. Put another way, no type of force is an "element" of the attempted version of this offense. It follows that Attempted Hobbs Act Robbery is not a "crime of violence" under Section 924(c), requiring the dismissal of Count Three.

The authority that the Governments cites to the contrary is unpersuasive. As the Court explained in *Celaj*, courts concluding that one attempting a Hobbs Act Robbery must also attempt a "crime of violence" conflate the *intent* to commit each element of the substantive offense (proof of which is necessary to convict someone of an attempt crime) with an *attempt* to commit each element of the substantive offense (proof of which is not necessary to convict someone of an intent crime). *See Celaj*, 2021 U.S. Dist. LEXIS 18816, at *39 (citing *United States v. St. Hubert*, 918 F.3d 1174, 1212 (11th Cir. 2019) (J. Pryor, dissenting)).

For the reasons above, the Court hereby DISMISSES Count Three, for violation of Section 924(c).

CONCLUSION

14

In sum, the Court GRANTS Valdez's motion to dismiss Count Three because the Court concludes attempted Hobbs Act Robbery is not a "crime of violence" pursuant to 18 U.S.C. §924(c)(A). However, the Court concludes the remainder of Valdez's motion is without merit; it is therefore DENIED.

Dated:  April 7, 2021
       New York, New York

                                                 **ANDREW L. CARTER, JR.**
                                                 **United States District Judge**